```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
----------------------------------------

DEAN GORDON,

                 Petitioner,         No. 15 Cv. 261

      - against -                **MEMORANDUM OPINION &**
                                                   **ORDER**

CHRISTOPHER SHANAHAN ET AL.,

                 Respondents.

----------------------------------------

**JOHN G. KOELTL, District Judge:**

     In 2002, Dean Gordon—a lawful permanent resident—pleaded guilty to the attempted sale of a controlled substance; he was eventually sentenced to imprisonment for one year and released from custody in September 2005. On June 26, 2014, agents from Immigration and Custom Enforcement ("ICE") arrested and detained Mr. Gordon because his 2005 conviction may render him removable from the United States. Mr. Gordon remains in detention pursuant to 8 U.S.C. § 1226(c), which requires the Department of Homeland Security ("DHS") to arrest and detain aliens who have committed certain crimes. Mr. Gordon has not received a bond hearing.

     Mr. Gordon now brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. He petitions for release from custody or a hearing in which the respondents would be required to demonstrate that his continued detention is justified.

For the following reasons, the petition for a writ of habeas corpus is **granted**, and the respondents are ordered to release Mr. Gordon unless they provide him a timely hearing to determine whether his continued detention is justified.

**I.**

In 1987, Dean Gordon became a lawful permanent resident of the United States.  Habeas Pet. Ex. C.  In 2002, Mr. Gordon was arrested on drug-related charges, and that same year he pleaded guilty in the New York State Supreme Court to the attempted sale of a controlled substance, in violation of New York Penal Law sections 110 and 220.39.  Gordon Decl. ¶ 11; Habeas Pet. Ex. F.  On May 11, 2005, he was sentenced to one-year imprisonment, and on September 15, 2005, he was released from state custody.  Gordon Decl. ¶¶ 11–13.

On June 26, 2014, ICE officers arrested Mr. Gordon and placed him in detention.  Gordon Decl. ¶ 2; Habeas Pet. Ex. D; Gov't Ex. D.  Mr. Gordon was detained pursuant to 8 U.S.C. § 1226(c), which provides for the detention without bond of certain aliens.  On July 3, 2014, Mr. Gordon was served with a Notice to Appear, which charged him with removability pursuant to 8 U.S.C. §§ 1227(a)(2)(A)(iii) (aggravated felony) and 1227(a)(2)(B)(i) (controlled substance offense).[1]  The Notice to

---

[1]     Mr. Gordon's attorney declared that on June 26, 2014, Mr. Gordon was served with a Notice to Appear that charged him with

2

Appear identifies the May 11, 2015, conviction as the basis for these charges.  Habeas Pet. Ex. D.

At a January 14, 2015, hearing, an immigration judge determined that Mr. Gordon was removable pursuant to the charges listed in the Notice to Appear.  Loyo Decl. ¶ 15.  At this hearing, Mr. Gordon requested a bond hearing.  The immigration judge denied the request, holding that Mr. Gordon was subject to mandatory detention.  Loyo Decl. ¶ 16.  The immigration judge then adjourned the hearing to allow Mr. Gordon to submit any applications for relief from removal.  Loyo Decl. ¶ 15.

Also on January 14, 2015, Mr. Gordon filed this petition for a writ of habeas corpus while temporarily detained at 201 Varick Street, New York, New York 10014.  Habeas Pet. ¶ 23.  Gordon is currently detained in Kearny, New Jersey.

## II.

The Court has jurisdiction pursuant to 28 U.S.C. §§ 2241 and 1331.  Although 8 U.S.C. § 1226(e) bars judicial review of certain "discretionary judgment[s]," that section does not deprive the Court of jurisdiction over Gordon's constitutional and statutory challenges to his detention.  See Demore v. Kim,

---

removal based on a separate 2002 conviction for misdemeanor possession of a controlled substance.  The DHS no longer appears to allege that Mr. Gordon is removable on this basis.  Loyo Decl. ¶ 7.

538 U.S. 510, 517 (2003); see also Louisaire v. Muller, 758 F. Supp. 2d 229, 234 (S.D.N.Y. 2010).[2]

### III.

Mr. Gordon was charged with being removable for having committed an aggravated felony and a controlled substance offense, and Congress mandated that such aliens must be taken into custody at the time they are released. See § 1226(c)(1) ("The Attorney General shall take into custody any alien who . . . is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title . . . when the alien is released . . . ."); see also United States v. Rios-Zamora, 153 Fed. App'x 517, 520-21 (10th Cir. 2005) ("With the transfer of authority under [6 U.S.C.] § 557, as of March 1, 2003, the title 'Attorney General' is synonymous with the Secretary of Homeland Security."). The DHS "may release an alien described in [§ 1226(c)(1)] only" for

---

[2]   The Government does not dispute that Mr. Gordon's petition falls within this Court's "respective jurisdiction[]," § 2241(a), and thus any challenge to the Court's personal jurisdiction or to venue is waived. See Kanai v. McHugh, 638 F.3d 251, 258 (4th Cir. 2011); Mathena v. United States, 577 F.3d 943, 946 n.3 (8th Cir. 2009); Moore v. Olson, 368 F.3d 757, 759 (7th Cir. 2004); Nwankwo v. Reno, 819 F. Supp. 1186, 1191 (E.D.N.Y. 1993); see also Mendoza v. Muller, No. 11cv7857, 2012 WL 252188, at *2 (S.D.N.Y. Jan. 25, 2012) ("Although Petitioner is being held in New Jersey, jurisdiction is proper in this Court because he filed the petition while detained in New York in connection with his immigration proceedings.")

4

narrow reasons not at issue here.  See § 1226(c)(2).  Unlike noncriminal aliens, who are detained under § 1226(a), aliens detained under § 1226(c) typically are not entitled to a bond hearing before an immigration judge.

Mr. Gordon challenges his continued detention without a bond hearing on three grounds.  First, he argues that § 1226(c)(1), which requires the Attorney General to "take into custody any alien . . . when the alien is released," only authorizes mandatory detention of aliens who are arrested immediately after their release from criminal custody.  Second, he contends that mandatory detention years after his release from criminal custody violates the Due Process Clause of the Fifth Amendment.  Finally, he argues that mandatory detention for more than six months violates the Due Process Clause.

Much ink has been devoted to § 1226(c).  Some courts have held that it applies only to an alien detained immediately after the alien's release from criminal custody, and others have held that it also applies to an alien released years before the alien's immigration detention provided the alien had been previously convicted of one of the offenses identified in § 1226(c)(1)(A)-(D).  See, e.g., Straker v. Jones, 986 F. Supp. 2d 345, 352-53 (S.D.N.Y. 2013) (collecting cases and noting the split).  The Board of Immigration Appeals has interpreted the mandatory detention provision of § 1226(c) to apply irrespective

5

of when an alien is released from custody following conviction for one of the specified offenses. In re Rojas, 23 I & N Dec. 117 (BIA 2001). The two courts of appeals to have considered this question have held that § 1226(c)'s mandatory detention provision applies regardless of when an alien is detained by immigration authorities. See Sylvain v. Attorney Gen., 714 F.3d 150, 156-61 (3d Cir. 2013); Hosh v. Lucero, 680 F.3d 375, 378-84 (4th Cir. 2012).

Courts also have disagreed as to whether the Due Process Clause permits the DHS to detain an alien without a bond hearing years after the alien's release from criminal custody. Compare Reynoso v. Aviles, No. 14cv9482, --- F. Supp. 3d ---, 2015 WL 500182, at *8-10 (S.D.N.Y. Feb. 5, 2015), with Castaneda v. Souza, 769 F.3d 32, 44, 46-47 (1st Cir. 2014) (interpreting § 1226(c) to require that criminal aliens be detained within a reasonable time after release from state criminal custody to avoid due process concerns), reh'g en banc granted & opinion withdrawn (Jan. 23, 2015).

The Court need not resolve these two issues. Here, Mr. Gordon has been detained for over eight months, and his continued detention without a bond hearing violates the Due Process Clause.

6

**A.**

The Fifth Amendment prohibits the government from depriving a person of liberty without due process of law.  "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."  Reno v. Flores, 507 U.S. 292, 306 (1993).

Two opinions from the Supreme Court, Zadvydas v. Davis, 533 U.S. 678 (2001), and Demore v. Kim, 538 U.S. 510 (2003), are instructive on the length of time that an alien may be detained without receiving a bond hearing.  In Zadvydas, the Court rejected a literal reading of 8 U.S.C. § 1231(a)(6), which provides that certain aliens who have been ordered to be removed may be detained "beyond the removal period and, if released, shall be subject to [certain] terms of supervision."  The Court expressed concern that detention under § 1231(a)(6)—which often occurs when the DHS has difficulty finding placement for an alien abroad—could become indefinite.  Id. at 682.  The Court then explained that "the serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any such protection is obvious."  Id. at 692.

To avoid this constitutional problem, the Court held that detention pursuant to § 1231(a)(6) is presumed reasonable for six months.  After that, continued detention is unlawful "if (1)

7

an alien demonstrates that there is no significant likelihood of removal in the reasonably foreseeable future and (2) the government is unable to rebut this showing." Wang v. Ashcroft, 320 F.3d 130, 146 (2d Cir. 2003) (citing Zadvydas, 533 U.S. at 701)).

In Demore, the Supreme Court considered the facial constitutionality of § 1226(c), the provision at issue here. The Court found that the Attorney General "may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings" pursuant to § 1226(c). 588 U.S. at 526. It distinguished Zadvydas on two grounds. First, the Court explained that for aliens awaiting removal proceedings, "detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings." Id. at 528. Second, the Court noted the brevity of pre-removal detention: "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." Id. at 532–33.

Justice Kennedy, concurring, identified an important limitation on the scope of the Court's holding. He explained that although § 1226(c) is not *per se* unconstitutional, an alien would be entitled to a bond hearing "if the continued detention

became unreasonable or unjustified."  Id. at 532 (Kennedy, J., concurring).  In such circumstances, "it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons."  Id. at 532–33.

**B.**

After Demore and Zadvydas, federal courts have analyzed constitutional challenges to the length of § 1226(c) detention under two different tests.

Some courts have adopted a bright-line rule, holding that aliens cannot be detained pursuant to § 1226(c) for more than six months without a bond hearing.  See, e.g., Rodriguez v. Robbins, 715 F.3d 1127, 1139 (9th Cir. 2013); Reid v. Donelan, 991 F. Supp. 2d 275, 279-81 (D. Mass. 2014).

Other courts have eschewed such a hard-and-fast rule.  Instead, they have held that after a certain point, detention pursuant § 1226(c) will become excessive.  But such a determination requires a fact-based inquiry that varies depending on the petitioner's individual circumstances.  See, e.g., Diop v. ICE/Homeland Sec., 656 F.3d 221, 234–35 (3d Cir. 2011); Ly v. Hensen, 351 F.3d 263, 271 (6th Cir. 2003); Martinez-Done v. McConnell, No. 14cv3071, --- F. Supp. 3d ---, 2014 WL 5032438, at *4 (S.D.N.Y. Oct. 8, 2014); Araujo-Cortes v.

9

Shanahan, 35 F.Supp.3d 533, 548-49 (S.D.N.Y. 2014); Johnson v. Orsino, 942 F. Supp. 2d 396, 409 (S.D.N.Y. 2013).

Regardless of the approach applied, the outcome in this case is the same. Mr. Gordon's continued detention without a bond hearing is unconstitutional.

c.

Under a bright-line test, Mr. Gordon's detention without a bond hearing plainly runs afoul of the Due Process Clause. Mr. Gordon has been detained for over eight months, which exceeds the sixth-month limit endorsed by the Ninth Circuit Court of Appeals and other courts.

Under the fact-dependent test, "the Court must assess the duration of the detention in proper context, considering factors such as which party bears responsibility for the prolonged detention, whether the continued duration of the detention is finite or near conclusion, and the interests served by continued detention." Araujo-Cortes, 35 F. Supp. 3d at 549 (internal quotation marks omitted).

The Government has made *no* showing that Mr. Gordon's continued mandatory detention is reasonable. In its opposition brief, the Government cites only Demore for the proposition that § 1226(c) is not *per se* unconstitutional. The Government did not contend that Mr. Gordon's prolonged mandatory detention is justified.

In any event, Mr. Gordon's continued detention without a bond hearing is constitutionally unreasonable.  He has been detained for more than eight months.  An immigration judge found Mr. Gordon removable on January 14, 2015, over six months after he was initially arrested and detained.  Loyo Decl. ¶ 15.  And Mr. Gordon's application for relief remains pending before the immigration judge.  In Demore, the Court explained that "in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days," and that in "the remaining 15% cases, in which the alien appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter."  538 U.S. at 529 (citation omitted).  Were this the typical removal proceeding, the Board of Immigration Appeals already would have decided Mr. Gordon's appeal.

This delay was not Mr. Gordon's fault.  The Government fails to identify any attempt by Mr. Gordon to delay the proceedings.  Although an immigration judge decided that Mr. Gordon's removal proceedings should be adjourned pending a competency hearing, Mr. Gordon made no such a request.  And a competency hearing was never held.  Loyo Decl. ¶¶ 11–12.  Moreover, it would be unreasonable to penalize Mr. Gordon for exercising his right to challenge removal by requiring him to be

11

detained while he exercises that right, even though such detention is unnecessary to further the purposes of detention—namely preventing danger to the community and risk of flight. And the initial six month delay from the time of arrest to the immigration judge's initial ruling was not Mr. Gordon's fault

Nor is there any evidence that Mr. Gordon's removal proceedings will end soon. At oral argument, counsel for Mr. Gordon represented that Mr. Gordon had applied for relief from removal. And the immigration judge's eventual order will be subject to review by the Board of Immigration Appeals and potentially by a court of appeals.

The Government also has not attempted to show that the interests in preventing flight and preventing any danger to the public justify Mr. Gordon's continued mandatory detention. Those concerns are slight here. Mr. Gordon has been a lawful permanent residence since he was five years old, and his family resides in New York. Gordon Decl. ¶¶ 3-6, 8-10, 17. He has every incentive to challenge his removability, which he cannot do if he flees. Nor has the Government suggested that Mr. Gordon poses a danger to the public. And the best way to determine whether Mr. Gordon poses such a risk or whether he may flee is through an individualized bond hearing. See Monestime v. Reilly, 704 F. Supp. 2d 453, 458 (S.D.N.Y. 2010). Moreover, Mr. Gordon's interest in a bond hearing is substantial.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process Clause] protects." Zadvydas, 533 U.S. at 690.

Accordingly, under either test, Mr. Gordon's continued detention without a bond hearing violates the Due Process Clause.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **granted**. The respondents are directed to release Mr. Gordon from custody unless they provide Mr. Gordon with an individualized bond hearing before an immigration judge by March 30, 2015. The Clerk is directed to enter judgment and to close this case.

**SO ORDERED.**

**Dated:    New York, New York
           March 13, 2015**            _____/s/_____
                                          **John G. Koeltl
                                          United States District Judge**